## Montana Co., Limited, v. Clark et al.

### (*Circuit Court, D. Montana.* June 6, 1890.

1. MINES AND MINING.
   Where defendants' mining claim is in the form of an isosceles triangle, they cannot follow their lode or vein on its downward dip, through the side lines of their claim, into plaintiff's claim. Parallelism in the end lines of the claim is essential to the exercise of such right. Following *Iron Silver Min. Co.* v. *Elgin Min. & S. Co.*, 118 U. S. 208, 6 Sup. Ct. Rep. 1177.

2. SAME—INJUNCTION.
   Rev. St. U. S. § 2322, provides that the locators of all mining claims shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their location, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins shall so far depart from a perpendicular in their course downwards as to extend outside the vertical side lines. *Held* that, the apex or top of a certain lode being within the surface lines of defendants' claim, plaintiff had no title to any portion of such vein underlying the premises granted to it, and therefore was not entitled to an injunction restraining defendants from working a portion of such vein within the side lines of plaintiff's claim.

3. SAME.
   Plaintiff had dug and owned a tunnel which was necessary to the working of a lode or vein in its claim. By means of this tunnel plaintiff was in the actual possession of a portion of the vein or lode having its apex in defendants' claim. Defendants proposed to extend an incline along their lode within the side lines of plaintiff's claim in such a way as to cut the tunnel. The effect of such extension would be to destroy the tunnel for the purposes of plaintiff, and, when extended beyond the tunnel, the incline would be wholly in the lode owned by plaintiff. *Held*, that defendants would be enjoined from extending their incline so as to cut the tunnel.

In Equity. Bill for an injunction.

Rev. St. U. S. § 2322, provides that the locators of all mining claims shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their location, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface location.

*Cullen, Sanders & Shelton* and *E. W. Toole*, for complainant.

*McConnell & Clayberg*, for defendants.

KNOWLES, J. The plaintiff moves for a judgment on the pleadings. This presents the question as to whether there are any material issues presented by them. The plaintiff sets forth that it is the owner in fee-simple of the Drum Lummon lode claim and the Marble Heart lode claim, and of all the precious ores therein contained, and was, at the commencement of this suit, in the possession of said premises, except so much as defendants wrongfully withheld from it; that in said premises is a vein or lode which runs through said Drum Lummon lode claim, and on its dip passes out thereof into the said Marble Heart lode claim; that plaintiff has for a long time past been engaged in working and mining upon said lode claims, and at great cost and expense has driven

tunnels and drifts in, along, and upon said vein or lode, from said Drum Lummon claim into said Marble Heart claim, which are necessary in order to enable plaintiff to work and mine its said mining claims; that defendants, commencing upon the Hopeful claim, have drifted into said Drum Lummon lode or vein in the Marble Heart claim, and have approached so near to the tunnels, drifts and workings of plaintiff in said claim as to endanger the same, and destroy them, and the use thereof by plaintiff, and that defendants threaten, by means of their shaft or incline, to enter into the tunnels, drifts, and workings of the plaintiff, and to destroy the same, and to deprive the plaintiff of the use of the same, and are so near to the workings of plaintiff as to be dangerous to plaintiff's workmen and employes, and, if permitted to continue, will greatly damage and injure plaintiff's property; and that defendants threaten to enter into plaintiff's Drum Lummon lode, and to extract the ores, quartz rock, and precious metals therein contained. The defendants in their answer do not deny the title of the Drum Lummon lode claim and Marble Heart lode claim to be in plaintiff. They admit that plaintiff has driven tunnels and drifts in said claims. They admit that the location of the Hopeful claim was made subsequent to the other two claims above named, and that plaintiff was in possession of said two claims. Defendants admit that their shaft or incline has reached very near to the tunnels, drifts, and workings of plaintiff, and that by their incline they have passed out of their side lines, and within the side lines of plaintiff's Marble Heart claim.

There was some doubt in my mind as to whether the complaint did not present such an issue as should call for the determination of the legal title to the place of the alleged trespass of defendants before the court could grant the relief asked by plaintiff, namely, a perpetual injunction restraining defendants from committing the acts complained of. There seems to be no claim on the part of the defendants but that the complaint states a sufficient cause of action. The complaint, with the admissions in the answer, probably dispenses with any such proceedings as above indicated on the part of the court. The defendants, in what they term a "cross-bill," disclose their defense, and justify their action of entering by means of an incline from the Hopeful claim into the Marble Heart claim. Although the defendants term this part of their pleadings a "cross-complaint," the court is justified in treating it as an answer, setting up new matter constituting a defense. This undoubtedly is what the pleading is. The plaintiff has so treated it by replying to it instead of answering it. In taking this position as to this pleading I am justified by the case of *Doyle* v. *Franklin*, 40 Cal. 106. In this answer the defendants set forth that the said Drum Lummon vein or lode enters the Hopeful claim, owned by defendants, at a point near the top or apex of their claim, and passes through the same, and out at the base of the triangular part of ground which defines their claim; that the apex of this vein or lode is in the Hopeful claim from the point of entrance to said base line thereof: that they commenced upon the apex of this vein with their said incline, and have followed the same down some 118 feet; that in its dip said

vein passes into the Marble Heart claim. The plaintiff in its complaint avers that the apex of this lode is wholly within the Drum Lummon and Marble Heart claims. Here an issue is presented, and a material one, and must be determined by evidence, and is not a matter of law.

The plaintiff presents the point for consideration that the allegations of defendants in their answer show that the Hopeful claim has no parallel end lines. The answer of defendants does show that their claim is in the form of an isosceles triangle. A triangle has but three sides, and no two of these can be parallel to each other. The question is here presented of the right of the defendants to follow on the dip of their lead into the Marble Heart claim through its side lines. This point was settled in the case of the *Iron Silver Min. Co.* v. *Elgin Min. & S. Co.*, 118 U. S. 208, 6 Sup. Ct. Rep. 1177. In that case the United States supreme court uses this language:

"Under the act of 1866, [14 St. 251,] parallelism in the end lines of a surface location was not required; but, where a location has been made since the act of 1872, such parallelism is essential to the existence of any right in the locator or patentee to follow his vein outside of the vertical planes drawn through the side lines. His lateral right by the statute is confined to such portion of the vein as lies between such planes drawn through the end lines, and extended in their own direction; that is, between parallel vertical planes. It can embrace no other."

This language is decisive of the defendants' right to follow their vein outside of their side lines. Having no parallel end lines, they cannot do it. The defendants urge that they located the Hopeful claim in such a way as to have parallel end lines. There is nothing in the pleadings to show this, and, if there was, I do not think they could maintain this position. According to the statement made by counsel, it appears the defendants did claim a piece of ground which had parallel end lines when they made their location; but it further appears that they set their stakes upon the premises of plaintiff, and claimed some of its ground. When compelled to relinquish what they had claimed, which belonged to plaintiff, they had no north end line, and their claim assumed the form of an isosceles triangle. The defendants could locate only what was subject to location, no matter what they claimed. It was decided in *Belk* v. *Meagher*, 104 U. S. 279–284, that a location upon premises belonging to another person gave no rights whatever. It was only when a location was made upon the public domain that rights were acquired. But does the fact that defendants cannot follow the lode out of the boundaries of their claim on its dip entitle the plaintiff to a judgment against them for so doing? Before the plaintiff would be entitled to a judgment, it must show that it is the owner of the vein upon which defendants entered its ground. The plaintiff received a grant from the United States to all lodes the top or apex of which was within the limits of their mining claim. It did not receive a grant to any lode which had its apex or top outside of its claims. Most, if not all, patents for lode mining claims have this clause, which specifies the conditions and stipulations under which the grant is made, namely:

"*Second.* That the premises hereby conveyed, with the exception of the surface, may be entered by the proprietor of any other vein, lode, ledge, or deposit, the top or apex of which lies outside the exterior limits of said survey, should the same in its downward course be found to penetrate, intersect, extend into, or underlie the premises hereby granted, for the purpose of extracting and removing the ore from such other vein, lode, ledge, or deposit."

This shows what construction has been placed upon that portion of the congressional mineral act by the land department of the United States. The interpretation placed upon a statute by the officers who have to act thereunder, and their practice thereunder for many years, is entitled to great weight in its interpretation. *U. S.* v. *Moore,* 95 U. S. 760. The United States is the proprietor of all veins or lodes whose apex or top is not within the limits of any grant it has made, and this clause reserves its rights, and these rights it may grant to any citizen, or to any one who has declared his intention to become such. In the case of *Mining Co.* v. *Cheesman,* 116 U. S. 533, 6 Sup. Ct. Rep. 481, Justice MILLER, speaking for the United State supreme court, after quoting section 2322 of the United States Revised Statutes, says:

"It is obvious that the vein, lode, or ledge of which the locator may have ' the exclusive right of possession and enjoyment' is one whose apex is found inside of his surface lines, extended vertically, and this right follows such vein, though in extending downward it may depart from a perpendicular, and extend laterally outside of the vertical lines of such surface location."

Had the defendants so located the Hopeful claim that it would have had parallel end lines, there can be no doubt but they would have been entitled to follow any vein, which may have its apex within its limits, and which passed through both end lines in its strike, on its dip into the Marble Heart claim. If the plaintiff would be entitled to veins or lodes whose apex is outside of the lines of their claims which enter the same on their dip, and which have not been granted by the United States to any one else, what is the extent of their right to such vein or lode? Suppose it should pass in its dip through the Marble Heart claim into adjoining ground, could plaintiff follow it beyond its lines? It is granted the right to follow beyond its lines only such veins or lodes as have their apex within the boundaries of its premises. It was urged that the plaintiff might be considered to have a grant of that portion of the vein found within the lines of its premises until the United States granted it to some one else. If the United States granted it this lode, there is no law for revoking that grant, and granting the lode or vein to another party. Such a construction of the statute would make it inconsistent with any reasonable intention on the part of congress.

The plaintiff insists that the rule of the common law that whoever owns the surface is entitled to all beneath the same should apply to a case such as this. But this doctrine is not fully applicable to lode mining claims, and cannot be invoked in this case at all. In this view I am supported by the opinion of Justice BEATTY in the case of *Bullion Min. Co.* v. *Crœsus Gold & Silver Min. Co.,* 5 Mng. Rep. 254. In this he says:

"The doctrine of the common law, that he who has a right to the surface of any portion of the earth has also the right to all beneath 'and above that

surface, has but a limited application to the rights of miners and others using the public lands of this state. Necessity has compelled a great modification of that doctrine. The departure from those old and established doctrines of the law will doubtless lead to many complications. To adhere to the common-law rules upon this subject is simply impossible."

From these considerations it would appear evident that plaintiff re-received no grant of any lode or vein whose apex is within the surface lines of the Hopeful claim. ' Notwithstanding this, it is urged that, as the defendants may acquire no title to any portion of such lode as lies within the limits of the Marble Heart claim, plaintiff has a better right to the same than defendants, because such part of the vein or lode is within the lines of their claim. In the case of *Reynolds* v. *Mining Co.*, 116 U. S. 687, 6 Sup. Ct. Rep. 601, it was claimed that, because a vein of ore had been found by defendants (plaintiffs in error in supreme court) within the lines of plaintiff's placer claim, and which defendants had acquired no title to from the government of the United States, plaintiff was entitled to the same, although such vein was known to exist by the grantors of plaintiff at the time of applying for the patent for this placer claim. The plaintiff claimed that the defendants were mere intruders and strangers, and that they were in possession of the premises. But the supreme court said that the vein, if known to exist at time of application for a patent, was not granted to plaintiff's grantors, but excluded from their patent; and that, although defendants did not connect themselves with any government grant, the plaintiff had no right to eject them from this lode. In this case the court below refused to give, at the prayer of the defendants, this instruction:

"If the vein is not conveyed to plaintiff by the placer patent under which they claim, then it makes no difference whether defendants have any title or not; the plaintiff cannot recover on the weakness of defendants' title."

The supreme court held this was error. It would seem that such a view of the law would meet the case now under consideration. If the plaintiff received no conveyance of that portion of the Drum Lummon lode which has its apex in the Hopeful claim, then it makes no difference whether defendants have any title or not to the same, the plaintiff cannot recover on the weakness of defendants' title. I have shown that the plaintiff received no grant for any lode whose apex is outside of their surface lines; that that was reserved to be granted to some one who should properly locate a piece of ground embracing this apex, whose end lines should be parallel. I do not conceive that there is any conflict between the doctrine here expressed and that set forth in *Cheesman* v. *Shreve*, 37 Fed. Rep. 36. The presumption may be that he who enters within the lines of another's mining claim on the surface or beneath the same is a trespasser; but where, as in this case, the fact is alleged that the defendants entered upon the Marble Heart claim by following down on its dip a vein or lode whose top or apex was without the limits of plaintiff's premises, a case is stated that shows that defendants were not trespassers upon plaintiff's premises; that they were following premises that did not belong to plaintiff.

The questions here raised being presented on a motion for a judgment on the pleadings for the purposes of the motion, the court must consider every fact set forth in the answer which is well pleaded as true. The result I have reached under the facts as presented by the pleadings is that, while the defendants cannot enjoin the plaintiff from working upon the lode or vein in dispute so far as the same lies wholly within the side lines of plaintiff's premises, the plaintiff cannot enjoin defendants from working upon such portions of that vein as has its apex within the lines of the Hopeful claim, until it shows in some way that it is the owner of, or entitled to the possession of, the same. If it should be shown by the evidence that the vein in dispute does not have its apex outside of plaintiff's premises, then there should be no dispute, but plaintiff should recover. I have considered this case upon the hypothesis that the facts set forth in the answer are substantially true. I am fully aware that the position taken in this case leaves a portion of a vein or lode in such a condition that it cannot be taken up by location, under the mineral act of the United States; but this portion of the vein cannot be said to belong to no one. It belongs to the government of the United States, and, by appropriate legislation, it can provide for the sale of the same.

There is no question presented upon the pleadings as to the appropriation of any portion of this vein or lode by taking actual possession of the same. I should not dispute but that an actual possession of portions of this vein or lode will give a right to the same as against an intruder, —a stranger,—that is, one who could not show a prior actual possession or a grant from the United States to the same.

The motion for judgment on the pleadings is overruled.

### ON THE MERITS.

KNOWLES, J. This case has been divested of much of the **difficulty** presented to the mind of the court from a consideration of the pleadings. It did seem that the legal title to a portion of the Drum Lummon lode might be so involved as to require that the same should be settled in an action at law. As the case is presented by the evidence, no conflict as to title appears. It is admitted that the plaintiff owns the Drum Lummon lode claim and the Marble Heart lode claim, and that the defendants own the Hopeful lode claim. That the Drum Lummon lode or vein passed out of that claim into the Hopeful claim, and runs across the same in a southerly direction about 66 feet, when it enters the Marble Heart claim. The plaintiff has dug and has an undisputed title to a tunnel called the "Cruse Tunnel," which runs along the aforesaid vein or lode, and across the Drum Lummon lode claim, into the Marble Heart claim. That plaintiff is or was in the actual possession of this tunnel. That it is necessary to the working and mining of said lode or vein in the Marble Heart claim. That by means of this tunnel plaintiff is in the actual possession of a portion of the aforesaid vein or lode, which has its top or apex in defendants' claim. It also appears that defendants are extending an incline which they started on the apex of the aforesaid lode or vein in their own ground, and were and still are threatening to extend

the same down along said vein, within the side lines of the Marble Heart claim, in such a direction as to cut the aforesaid Cruse tunnel at a point where the same is wholly within that portion of the Drum Lummon lode or vein owned wholly by plaintiff. That in their operations they have already loosened the rock in the roof of said tunnel at the point where said incline, if extended, would enter the same. Although the defendants have 66 feet of the apex of the said lode or vein, owing to the fact that they located their claim in such a manner as to have no parallel end lines thereto, they have no legal right to follow their vein or lode beyond their side lines; never having received a grant to that portion of said lode beyond these, although owning the apex. It sufficiently appears from the evidence, if defendants are permitted to extend their incline it will wholly destroy the said Cruse tunnel for the use to which plaintiff is putting the same. The defendants do not deny that it was their purpose to extend this incline into and through this tunnel, and into the Drum Lummon vein beyond, in their search for ore; and the evidence shows that when extended beyond this tunnel, the incline will be wholly within that portion of the said vein or lode owned by plaintiff. It is true that the evidence shows that plaintiff might dig another tunnel around this incline at a cost of about $1,000. This would be in part a new tunnel, and would be on a curve. A curved line is not as short as a straight one, and cars run upon a curved track encounter greater friction than on a straight one. The plaintiff, if compelled to abandon its old line of tunnel, would also be forced to abandon for some distance its possession of a portion of the said vein or lode which has its apex in defendants' premises. The defendants, in extending their incline beyond the tunnel, would be within the undisputed premises of plaintiff, and would be compelled in their workings to remove vein matter, and perhaps ore, from plaintiff's premises, concerning the title to which there is no dispute in this action. The defendants, as to this tunnel and the vein matter and ore beyond the same, come as strangers,—trespassers. They are clothed with no right whatever to destroy plaintiff's tunnel, or to disturb its possession of any portion of said vein along the line of said tunnel. If the defendants had any legal right to explore the said vein or lode beyond said tunnel, a plea for an accommodation in this matter would come with great force. But no ground exists for such plea. It would seem that no action for damages would afford adequate relief under such circumstances. The remedy for the wrongs threatened can be awarded only in a court of equity.

For these reasons, I think the plaintiff is entitled to the relief asked. It is therefore ordered that an injunction issue restraining and enjoining the defendants from extending their incline so as to cut the tunnel of plaintiff.